UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KINSALE INSURANCE COMPANY,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>VBC MADISON LP et al.,<br><br>　　　　　　　　　Defendants. | CASE NO. 2:24-cv-02168-LK<br><br>ORDER DENYING MOTION<br>FOR SUMMARY JUDGMENT |

　　This matter comes before the Court on Plaintiff Kinsale Insurance Company's motion for summary judgment. Dkt. No. 46. For the reasons explained below, the motion is denied.[1]

### I. BACKGROUND

**A.　The June 2022 Fire and VBC's Efforts to Secure its Building**

　　This is an insurance coverage action. Defendant VBC Madison LP, the insured party in this case, owned a building in Seattle formerly located at 823 Madison Street. Dkt. No. 51 at 2. The building caught fire in June 2022, prompting the City of Seattle to order that the building be

---

[1] Because this matter can be decided based on the written submissions, the Court denies Kinsale's request for oral argument. Dkt. No. 46 at 1.

vacated. *Id.* By the end of September 2022, all of the tenants had moved out. *Id.*

VBC then decided to begin abatement and selective demolition of the building. *Id.* VBC had the building secured as part of that process. *Id.* It later re-secured the building in response to trespassers gaining access: it covered ground and second floor windows with plywood, screwed doors and access hatches shut with tamper resistant screws (which can only be removed with special equipment), and secured plywood barricades with concrete bolts. *Id.* All in, the June 2022 fire, clean up efforts, selective demolition, and security measures to keep trespassers out cost VBC approximately $4 million. *Id.*

**B.    The January 1, 2024 Fire and Underlying Claims**

On January 1, 2024, the building caught fire again. *Id.* at 3. The Seattle Fire Department ("SFD") classified the cause of the fire as "undetermined." Dkt. No. 47-1 at 2. The SFD's report speculated that the fire was "likely due to homeless/transient activity," possibly related to "cooking and drug use." *Id.* Photographs taken after the fire show that SFD had to cut through bars over the ground floor windows and cut through plywood to access the building while fighting the fire. Dkt. No. 51 at 3–6.

Frontier Development Corporation owns an adjacent building, located at 909 9th Avenue in Seattle. Dkt. No. 55 at 4. Frontier contends that the fire, which originated at VBC's building, spread to its adjacent building and caused approximately $1.05 million in damages. Dkt. No. 24 at 4. Frontier's liability insurer, RSUI Indemnity Company, sent a demand letter to VBC in February 2024. *Id.*; *see also* Dkt. No. 47-3. Kinsale refers to Frontier's property damage claims against VBC as the "Underlying Claims." Dkt. No. 46 at 2.

**C.    The Kinsale Policy**

Plaintiff Kinsale Insurance Company is VBC's liability insurer. Kinsale sold VBC a commercial general liability policy that provides coverage for "property damage" caused by an

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 2

"occurrence" (defined as "an accident"), with a duty to defend and indemnify VBC against suits seeking such damages. Dkt. No. 47-2 at 6, 20.

Kinsale is defending VBC with respect to Frontier's Underlying Claims under a reservation of rights. Dkt. No. 24 at 9. Kinsale does not dispute that the claims fall within the policy's insuring agreement, but argues that two exclusions bar coverage: (1) the Fire or Fire Related Injury or Damage Exclusion and (2) the Unsecured Property Exclusion. Dkt. No. 46 at 10–13.

1. Fire or Fire-Related Injury or Damage Exclusion

The Fire Exclusion states:

> This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of, related to, or in any way involving fire, smoke, or any conceivable by-product of combustion.
>
> This exclusion applies to any claim or "suit" regardless of whether fire, smoke, or any conceivable by-product of combustion is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that involves or includes any fire, smoke, or any conceivable by-product of combustion.

Dkt. No. 47-2 at 66.

2. Unsecured Property Exclusion

The Unsecured Property Exclusion states:

> This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving a vacant or unoccupied building unless it is "secured" and inaccessible to human entry except by authorized persons.
>
> "Secured" means securely covered at all access points below grade level, on grade level, or within fifteen (15) feet above grade level.

*Id.* at 59.

### D. Procedural Background

Kinsale filed suit seeking a declaration "that Kinsale owes no defense obligation to VBC for any claims asserted against it arising from the subject loss" and that it "owes no indemnity obligation to VBC for any claims asserted against it, including but not limited to the Subrogation Claims, arising from the subject loss." Dkt. No. 54 at 32. It filed its motion for summary judgment on both claims on May 30, 2025. Dkt. No. 46.

## II. DISCUSSION

### A. Legal Standards

Because this Court sits in diversity jurisdiction, it will apply Washington state substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

#### 1. Summary Judgment

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

Once the movant has made that showing, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation modified). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89. Nor is it the Court's job to "scour the record in search of a genuine issue of triable fact"; rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

        2.   <u>Insurance Policy Construction</u>

Under Washington law, "[i]nterpretation or construction of an insurance contract is a question of law and may properly be determined on motion for summary judgment." *Wampold v. Safeco Ins. Co. of Am.*, 409 F. Supp. 3d 962, 967 (W.D. Wash. 2019) (quoting *Gerken v. Mut. of Enumclaw Ins. Co.*, 872 P.2d 1108, 1112 (Wash. Ct. App. 1994)).

Determining whether coverage exists under a policy is a two-step process. "The burden first falls on the insured to show its loss is within the scope of the policy's insured losses. If such a showing has been made, the insurer can nevertheless avoid liability by showing the loss is excluded by specific policy language." *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002) (internal citation omitted).

The "primary goal" in interpreting an insurance policy is to ascertain and give effect to the parties' intent at the time of the policy's execution—not "the interpretations the parties are advocating at the time of the litigation." *Int'l Marine Underwriters v. ABCD Marine, LLC*, 313

P.3d 395, 399–400 (Wash. 2013). In doing so, the Court "construe[s the] insurance polic[y] as a whole and give[s] the language a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 516 P.3d 796, 800 (Wash. 2022) (citation modified); *Certification from U.S. Dist. Ct. ex rel. W. Dist. of Wash. (Kroeber) v. GEICO Ins. Co.*, 366 P.3d 1237, 1239 (Wash. 2016) ("This court views an insurance contract in its entirety, does not interpret a phrase in isolation, and gives effect to each provision."). Undefined terms are thus given "their popular and ordinary meaning[.]" *Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 601 (Wash. 2016). But when the policy expressly defines a term, the Court is bound by that definition. *Overton*, 38 P.3d at 327.

In the insurance context, the duty to defend is broader than the duty to indemnify. *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). "An insurance company has the duty to indemnify if the insurance policy *actually* covers the insured, while the duty to defend arises if the insurance policy *conceivably* covers the insured." *Robbins v. Mason Cnty. Title Ins. Co.*, 462 P.3d 430, 435 (Wash. 2020). Ambiguities in the policy are strictly construed against the insurer. *Findlay v. United Pac. Ins. Co.*, 917 P.2d 116, 119 (Wash. 1996). This rule "applies with added force to exclusionary clauses," *id.*; policy exclusions are "most strictly construed against the insurer," *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 697 (Wash. 2010) (citation modified). When determining whether ambiguity exists, the Court—as is the case generally—views the policy language as it would be read by the average insurance purchaser. *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1246–47 (Wash. 1997). Policy language is ambiguous only "if, on its face, it is fairly susceptible to two different but reasonable interpretations." *Seattle Tunnel Partners*, 516 P.3d at 800. Where, however, the policy language "is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists." *Transcon. Ins. Co. v. Wash. Pub. Utilities Dists.' Util. Sys.*, 760 P.2d 337, 340 (Wash.

1988). "[W]here multiple reasonable definitions of an undefined term in an insurance policy exist . . . courts adopt the definition that most favors the insured." *Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 515 P.3d 525, 531 (Wash. 2022) (quoting *McLaughlin v. Travelers Com. Ins. Co.*, 476 P.3d 1032, 1037 (Wash. 2020)).

### B. Factual Issues Preclude Summary Judgment on the Fire Exclusion

Kinsale argues that coverage is precluded by the Fire or Fire-Related Injury or Damage Exclusion. Dkt. No. 46 at 12. VBC responds that the efficient proximate cause rule prevents the Fire Exclusion from applying. Dkt. No. 50 at 7.

As an initial matter, the parties agree that the commercial general liability policy Kinsale issued to VBC provides for coverage for "those sums that [VBC] becomes legally obligated to pay as damages because of . . . 'property damage[.]'" Dkt. No. 47-2 at 6. It is undisputed that the Underlying Claims seek "damages" from "property damage." Dkt. No. 47-2 at 6; Dkt. No. 54 at 6; Dkt. No. 50 at 6.

Washington's efficient proximate cause rule provides for coverage "where a covered peril sets in motion a causal chain the last link of which is an uncovered peril." *Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017) (citation modified). "If the initial event, the efficient proximate cause, is a covered peril, then there is coverage under the policy regardless whether subsequent events within the chain, which may be causes-in-fact of the loss, are excluded by the policy." *Id.* (citation modified). The rule "applies only when two or more perils combine in sequence to cause a loss and a covered peril is the predominant or efficient cause of the loss." *Id.* at 1241–42 (citation modified).

VBC argues that (1) the Fire Exclusion cannot be read in a way that circumvents the efficient proximate cause rule, and (2) the Exclusion—interpreted consistently with the efficient proximate cause rule—does not clearly apply, because there is factual dispute over whether a

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 7

covered peril (e.g., trespassing, vandalism, or criminal acts of third parties) was the initiating cause of the loss. Dkt, No. 50 at 7–12. The Court addresses each argument in turn.

1. The Fire Exclusion Must Be Construed Based on the Efficient Proximate Cause Rule

The Court begins with the text of the policy. Again, the Fire Exclusion bars coverage for:

> any claim or "suit" for . . . "property damage" . . . arising directly or indirectly out of, related to, or in any way involving fire, smoke, or any conceivable by-product of combustion.
>
> This exclusion applies to any claim or "suit" regardless of whether fire, smoke, or any conceivable by-product of combustion is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence[.]

Dkt. No. 47-2 at 66. As this Court has previously observed, "[t]he Washington Supreme Court has repeatedly warned that insurers 'cannot contract around the efficient proximate cause rule, i.e., [they] cannot contract to exclude coverage for excluded perils within a causal chain initially started by a covered peril.'" *Ridge at Riverview Homeowner's Ass'n v. Country Cas. Ins. Co.*, No. 21-CV-00950-LK, 2023 WL 22678, at *6 (W.D. Wash. Jan. 3, 2023) (quoting *Hill & Stout,* 515 P.3d at 536); *see also Xia*, 400 P.3d at 1241 ("The exclusion cannot eviscerate a covered occurrence merely because an uncovered peril appeared later in the causal chain."); *Safeco Ins. Co. of Am. v. Hirschmann*, 773 P.2d 413, 416–17 (Wash. 1989) ("When an insured risk sets into operation a chain of causation in which the last step may be an excluded risk, the exclusion will not defeat recovery."). Although the state's highest court has "left open the possibility that an insurer may draft policy language to deny coverage when an excluded peril initiates an unbroken causal chain," *Vision One v. Phila. Indem. Ins.*, 276 P.3d at 300, 309 (Wash. 2012) (en banc),[2] that is not what

---

[2] *See also Xia*, 400 P.3d at 1241 ("It is perfectly acceptable for insurers to write exclusions that deny coverage when an excluded occurrence initiates the causal chain and is itself either the sole proximate cause or the efficient proximate cause of the loss."); *Findlay v. United Pac. Ins. Co.*, 917 P.2d 116, 120 (Wash. 1996) (while "the use of broad policy language which eliminates the relevance of the efficient proximate cause rule under all possible circumstances" is prohibited, the Washington Supreme Court "did not forbid the use of clear policy language to exclude a specifically named peril from coverage").

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 8

Kinsale has done here. Instead, Kinsale purports to exclude coverage even when a covered peril initiates an unbroken causal chain: the Fire Exclusion applies "regardless of whether fire . . . is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence." Dkt. No. 47-2 at 66. In other words, in a scenario where fire is a cause—but not the initial precipitating cause—of the loss, the Fire Exclusion would bar coverage, whereas the efficient proximate cause rule would mandate it (assuming the initiating cause is a covered peril).

Kinsale attempts to avoid this problem by arguing that the efficient proximate cause rule "applie[s] only to first-party property coverage claims," and here, "the Underlying Claims are third-party claims being made against VBC's commercial general liability policy." Dkt. No. 52 at 4. In support of its argument, Kinsale cites *Lesure v. Farmers Ins. Co. of Washington*, 392 P.3d 1076 (Wash. Ct. App. 2016), which purports to limit the rule to "determin[ing] first-party insurance policy coverage," *id.* at 1079. But Kinsale does not explain why that distinction should make a difference. "[T]he purpose of the efficient proximate cause rule is to provide a workable rule of coverage that provides a fair result within the reasonable expectations of both the insured and the insurer," *Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 312 (Wash. 1994), and the Court sees no reason why (absent express language in the policy stating otherwise) the rule should function differently depending on whether a loss to the insured under a commercial general liability policy stems from the insured's own injury or that of a third party. Furthermore, *Lesure* predated *Xia*, which emphasized that "the [efficient proximate cause] rule has broad application," and applied the rule in analogous circumstances. *Xia*, 400 P.3d at 1240. In *Xia*, the issue was whether the policy issued to a contractor (the first party) covered bodily injuries suffered by the contractor's customer, Zhaoyun "Julia" Xia (a third party). *Id.* at 1237. After the contractor assigned its rights to Xia, she sued the contractor's insurance company to recover for her injuries; thus, as in this case, *Xia*

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 9

involved a suit to recover damages incurred by a third party. And significantly, the majority ruled in favor of Xia over a dissent protesting that "[u]ntil now, we have applied the efficient proximate cause rule only in first party coverage cases," whereas Xia presented a "third party 'liability' coverage" case. *Id.* at 1246 n.1 (Madsen, J., dissenting).[3] Based on *Xia*, the Court finds that the efficient proximate cause rule applies in the circumstances of this case.[4] This is true regardless of the fact that Kinsale used the phrase "arising out of" to describe the excluded act. *See Dolsen Cos. v. Bedivere Ins. Co.*, 264 F. Supp. 3d 1083, 1093–94 (E.D. Wash. 2017) ("Although the term [']arising out of['] is generally broader than [']proximately caused by[']—and the rule would not apply if freedom of contract governed without restriction—the court in *Xia* expressly disavowed attempts to circumvent the efficient cause rule with the [] use of broad policy language which eliminates the relevance of the efficient proximate cause rule under all possible circumstances. As a consequence, the difference of language does not appear to be material." (citation modified)); *see also Country Mut. Ins. Co. v. Evergreen Landing LLC*, No. C20-5337 RJB-TLF, 2020 WL 6044505, at *1, 3 (W.D. Wash. Oct. 13, 2020) (applying the efficient proximate cause rule where a policy's mold exclusion excluded coverage for "[a]ny loss, cost or expense arising out of ... 'fungi' or bacteria," and noting that "[t]he Fungi or Bacteria exclusion cannot contract around

---

[3] Much of Kinsale's arguments echo Justice Madsen's concerns in *Xia*. *See, e.g.*, Dkt. No. 46 at 12–13 ("[T]he plain and unambiguous language of the Kinsale Policy excludes coverage for property damage arising directly or indirectly from fire[.]"). But as much as this Court might agree with dissenting justices that "[t]here is simply nothing ambiguous about the broad, absolute . . . exclusion in this case," and that applying the efficient proximate cause rule "would contradict the plain language" of the exclusion, *Xia*, 400 P.3d at 1245–46 (Madsen, J., dissenting); *see also Hirschmann*, 773 P.2d at 418 (Callow, C.J., dissenting) ("The majority invalidates unambiguous contractual language without explicitly identifying any public policy with which the challenged provisions of the policy conflict[.]"), it must abide by the decisions of the majority, not the dissent, *see Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995).

[4] Kinsale argues that other cases in this district have "declined to adopt *Xia* and apply the EPC rule in third-party liability cases with facts analogous to those presented here." Dkt. No. 52 at 5. That is not exactly right. Those cases declined to apply the efficient proximate cause rule for reasons that do not apply here; neither court concluded that the rule categorically does not apply to third-party coverage cases. *See Charter Oak Fire Ins. Co. v. Chas. H. Beresford Co.*, 575 F. Supp. 3d 1313 (W.D. Wash. 2021); *Safeco Ins. Co. of Am. v. Wolk*, 342 F. Supp. 3d 1104 (W.D. Wash. 2018). Indeed, neither of the cases Kinsale cites discusses the distinction between first- and third-party coverage cases at all.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 10

efficient proximate cause rule, so a covered peril that results in excluded 'mold' damage will result in a duty to defend"). As the Washington Supreme Court observed in *Hill & Stout*, language excluding loss or damage "regardless of *any other cause or event that contributes concurrently or in any sequence to the loss*" is "an example of contracting around the efficient proximate cause rule." 515 P.3d at 536.

Because the efficient proximate cause rule applies, the Fire Exclusion is unenforceable to the extent it excludes coverage that would be mandated by the rule. *See id.* ("a policy cannot contract around the efficient proximate cause rule; i.e., it cannot contract to exclude coverage for excluded perils within a causal chain initially started by a covered peril"); *Xia*, 400 P.3d at 1241 (attempts "to draft language into the exclusion that expressly circumvents the [efficient proximate cause] rule" should be rejected).

    2.  <u>There Are Disputed Issues of Fact as to Whether the Efficient Proximate Cause of the Subject Loss is a Covered Peril</u>

The parties do not dispute that the cause of the fire is currently undetermined. If the efficient proximate cause is a covered peril (such as trespassing, vandalism, or criminal acts of third parties)[5] as VBC argues, then the Fire Exclusion does not apply.

As noted above, an efficient proximate cause is the "cause which sets into motion the chain of events producing the loss"—it is "not necessarily the last act in a chain of events." *Hirschmann*, 773 P.2d at 415 (quoting *Graham v. Pub. Emps. Mut. Ins. Co.*, 656 P.2d 1077, 1081 (Wash. 1983). Here, the cause that set into motion the chain of events resulting in damage to Frontier's building is the occurrence that caused the fire in VBC's building. Contrary to Kinsale's arguments, the evidence suggests that the fire could have been caused by the covered perils of trespassing,

---

[5] Kinsale argues that "[t]his case does not involve a covered peril," Dkt. No. 52 at 11, but does not directly rebut VBC's specific arguments that "[t]respassing, vandalism, and criminal acts of third parties are not excluded by the Policy" and thus are covered perils, Dkt. No. 50 at 10. The policy does not suggest that these perils are excluded. *See generally* Dkt. No. 47-2.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 11

vandalism, or criminal acts of third parties.

*Hirschmann* is instructive. There, the insured owned a vacation home damaged by a landslide, which was triggered by heavy rainfall. *Id.* at 413–14. The insurance policy with Safeco excluded losses from landslides. *Id*. Safeco argued that the landslide exclusion barred coverage, but the Washington Supreme Court concluded that because "a finder of fact could conclude that the efficient proximate cause of the destruction of [the insured's] home was the covered perils of wind and rain, and that the excluded peril of landslide was merely the final link in the causal chain . . . [t]he summary judgment in favor of Safeco [] cannot stand." *Id.* at 417.

*Xia* is also similar in relevant ways. There, the negligent installation of a hot water heater caused the release of toxic levels of carbon monoxide into a home. *Xia*, 400 P.3d at 1236. The insurance policy contained a broad exclusion for bodily injury caused by a pollutant. *Id.* at 1241. The Washington Supreme Court found that the negligent installation of the water heater (a covered peril) was the efficient proximate cause because it was the event that set in motion a causal chain that resulted in the excluded peril (injury caused by pollution). *Id.* at 1243.

The same logic applies here. The efficient proximate cause is not the last act in the chain of events (the landslide in *Hirschmann*, the release of carbon monoxide in *Xia*, and the fire in this case); rather, it is the initiating cause which set everything else into motion. In *Hirschmann*, that was heavy wind and rain; in *Xia*, it was the negligent installation of the water heater; and here, it is the occurrence that caused the fire. *See also, e.g.*, *Graff v. Allstate Ins. Co.*, 54 P.3d 1266, 1269 (Wash. Ct. App. 2002) (policy excluding loss from "contamination" covered contamination loss where vandalism was the efficient proximate cause; specifically, tenants of insured committed vandalism by "creat[ing] harmful vapors and residues" from an indoor methamphetamine lab "that damaged [the insured's] rental house"); *Bowers v. Farmers Ins. Exch.*, 991 P.2d 734, 736–38 (Wash. Ct. App. 2000) (policy providing that insurer did "*not* cover direct or indirect loss from

. . . . mold" covered mold damage where vandalism was the efficient proximate cause; specifically, tenants of insured committed vandalism by "creat[ing] a sauna-like environment in the basement" to grow marijuana, causing the mold). VBC has presented sufficient evidence to suggest that the fire may have been caused by a covered peril—e.g., trespassing, vandalism, and criminal acts of third parties. Dkt. No. 50 at 10. For example, the SFD's report states that the fire's cause was "undetermined" but "most likely due to homeless/transient activity" involving "cooking and drug use." Dkt. No. 47-1 at 2–3. If a jury concludes similarly, then the Fire Exclusion would not apply because the efficient proximate cause of the fire would be a covered peril.

For these reasons, determining whether the Fire Exclusion applies involves resolving disputed issues of material fact, and is thus not something the Court can resolve at the summary judgment stage. *See Hill & Stout*, 515 P.3d at 535 ("The determination of the efficient proximate cause of loss is a question of fact for the fact finder."); *AXIS Surplus Ins. Co. v. Intracorp Real Est., LLC*, No. C08-1278-JCC, 2009 WL 10676383, at *5 (W.D. Wash. Sept. 14, 2009) ("[T]he Court may not, on a motion for summary judgment, decide issues of proximate cause unless those facts are truly undisputed, such that no reasonable jury could decide otherwise."); *Churchill v. Factory Mut. Ins. Co.*, 234 F. Supp. 2d 1182, 1186–87 (W.D. Wash. 2002) ("The court cannot resolve the question of coverage on summary judgment because the efficient proximate cause of Plaintiff's losses has not been determined.").

C.     **Factual Issues Preclude Summary Judgment on the Unsecured Property Exclusion**

Next, Kinsale argues that even if trespassing, vandalism, or criminal acts of third parties were the cause of the fire, the Unsecured Property Exclusion bars coverage. Dkt. No. 46 at 12–13; Dkt. No. 52 at 8–9. As noted above, that Exclusion bars

> any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way

> involving a vacant or unoccupied building unless it is "secured" and inaccessible to human entry except by authorized persons.

Dkt. No. 47-2 at 59. "'Secured' means securely covered at all access points below grade level, on grade level, or within fifteen (15) feet above grade level." *Id.* Kinsale argues that it is "uncontested that [VBC's building] was unoccupied and unsecured at the time of the subject loss." Dkt. No. 46 at 12. In support, Kinsale cites the SFD's report, which stated that the "south-side stairwell/courtyard [] is unsecured." Dkt. No. 47-1 at 2 (capitalization removed). Kinsale also relies on RSUI's allegation that the building was unsecured. Dkt. No. 46 at 12; *see also* Dkt. No. 47-3.

VBC responds that it "spent significant sums—approximately $4 million over a year and a half—on security patrols of the property, contractors erecting and maintaining barriers to access of the property, building cleanup and selective demolition." Dkt. No. 50 at 12. For example, evidence in the record shows that VBC's contractor "secured the doors with metal bars and special tamper-resistant screws that require specialized tools to remove," and that "[p]lywood barricades were secured with concrete anchor bolts." *Id.* (citing Dkt. No. 51). Furthermore, photographs show that "the Fire Department had to cut bars form [sic] the first level windows, and cut and remove plywood over second floor windows to gain access." *Id.* (citing Dkt. No. 51); *see also* Dkt. No. 51 at 5–6. As to SFD's report, VBC argues that it "was written by someone who witnessed the conditions during and after the fire"—and thus no one from the department saw the building *before* the fire "to see whether [it] was unsecured as opposed to trespassers taking extraordinary steps to defeat reasonable security measures." Dkt. No 50 at 13.[6] VBC also argues—and the Court agrees—that it did not admit that the building was unsecured and that RSUI's allegation that it was unsecured does not make this an undisputed issue of fact. *Id.*

---

[6] VBC also argues that the Exclusion does not apply because it is limited to property damage arising out of a "vacant" or "unoccupied" building, and here, evidence shows that the building was occupied. Dkt. No. 50 at 13. The Court is not persuaded. A plain reading of the clause renders it applicable if the building is (1) *either* vacant *or* unoccupied, and (2) unsecured. Here, it is undisputed that the building was vacant. *See* Dkt. No. 51 at 2; Dkt. No. 52 at 3.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 14

Ultimately, what SFD reported on the day of the fire is not dispositive of the factual question regarding whether and to what extent VBC's building was secured. There is evidence in the record that VBC secured the doors and windows on the first and second floors. *See* Dkt. No. 47-2 at 59 ("'Secured' means securely covered at all access points below grade level, on grade level, or within fifteen (15) feet above grade level."). The fact that SFD noted that the building's south-side stairwell/courtyard "is unsecured," Dkt. No. 47-1 at 2, could mean, among other things, (1) that VBC did not secure that side of the building, in which case the Exclusion would apply, (2) that the fire destroyed some of the barricades on the south-side of the building, in which case the Exclusion may not apply, (3) that the barricades were breached and removed by trespassers prior to the fire, in which case the Exclusion also may not apply, or (4) that SFD believed it was unsecured based on prior observations of "transient traffic" there, *id.*, which does not necessarily show that the building was unsecured at the time of the fire.

Because the extent to which VBC secured its building is a disputed issue of material fact, summary judgment on this basis is precluded.

### III.  CONCLUSION

For the reasons explained above, Kinsale's motion for summary judgment is DENIED. Dkt. No. 46.

Dated this 8th day of September, 2025.

_Lauren King_
Lauren King
United States District Judge